UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No: 1:24-cr-00406-RC |
| Plaintiff, | : | |
| | : | JUDGE RUDOLPH CONTRERAS |
| v. | : | |
| TRAYON WHITE SR., | : | |
| Defendant. | : | |

**DECLARATION OF NICOLE C. LEDESMA**

I, Nicole C. Ledesma, hereby declare:

1. I am an attorney licensed to practice law in Washington, D.C., and I am associated with the firm of Searby PLLC.

2. I make this Declaration based on personal knowledge, in support of Trayon White Sr.'s contemporaneously-filed Omnibus Post-Trial Motion, in particular his Motion for a Mistrial and his Motion to Dismiss the Indictment on Double Jeopardy Grounds.

3. In order to refresh my recollection, I reviewed the Court's transcripts and the docket for this case.

**September 18, 2026:**

4. On Friday, September 18, 2026, the Court asked the Government whether the federal contracts were part of the Government's case. The Government replied, "No -- I'm sorry,

Your Honor, is it part of the indictment and the charging -- No, it's not necessarily in the -- it's not in the indictment. It's inextricably intertwined with the evidence that we did. We're not arguing that he violated any sort of statute in this case. We're talking about the federal contracts. That's just in the evidence. And certainly, it provides additional evidence that the defendant agreed to Mr. Kamara's terms with respect to his contracts with ONSE and DYRS, because it shows motive, intent, opportunity, all those kind of things. But are we going to argue to the jury that that is somehow part of the reason he's guilty of bribery in this case? No, we're not, Your Honor."

**September 21, 2026:**

5. On Monday, September 21st, 2026, attorney Bruce H. Searby proposed an additional jury instruction to this Court. The Court considered them to be kind of tardy but heard what Mr. Searby had to say. Mr. Searby mentioned that during trial, the Government was eliciting testimony about matters in the recordings that involved the possibilities of contracts for Medicaid services, mental health services, and federal contracting opportunities. As these matters were speculative, Mr. Searby requested that there be an instruction to the jury not to consider these items as evidence of the defendant's guilt.
6. Mr. Searby reminded the Court that on Friday, September 18, 2026, during the Rule 29 oral motion discussion, the Government stated that it did not intend to argue that the federal contracts were evidence of the defendant's guilt. Therefore, Mr. Searby asked the Court to rule that the Medicaid contracting opportunity not be evidence of the defendant's guilt and that the jury be so instructed.
7. The Court later asked the Government whether it thought that there should be an instruction about the Medicaid information and/or the federal contracts about how, if at

all, they could be applied to the issue of whether the defendant violated the statute. The Government claimed that the evidence was intrinsic, so no instruction was appropriate. The Court reminded the Government that the Government had conceded that it was not basing any theory of the violation of the bribery statute on the federal contracts. The Government then stated that it would propose a jury instruction.

8. This Court made a suggestion that the parties talk to each other and come to an agreed-upon instruction. To which the Government replied, that it didn't hear the Court and then said: "Yes, Your Honor."

9. The defense team understood from this exchange that it would receive a draft of the Government's proposed jury instruction for purposes of meeting and conferring, but nothing ever arrived for review prior to filing. The parties did not meet and confer and neither party communicated to the other party to do so.

**September 22, 2026:**

10. The next day, at 7:50 AM on Tuesday, September 22, 2026, the Government filed ECF 126 a five-page Proposed Jury Instructions document (with a thirty-three page exhibit of jury instructions in another case in which Judge Mehta presided). There were four different proposed instructions in this document, one of which was a limiting instruction regarding intrinsic evidence where it discussed contracting in the areas of mental health services, public housing, and schools.

11. A short time later that morning, the parties and the Court met at 9:30 AM to begin proceedings.

12. Prior to discussing the jury instructions, the Court handled a few other matters with the parties and asked Mr. Searby whether he had read what the Government filed that morning. Mr. Searby confirmed that he had read it and that he was ready to respond to it.
13. The Court asked for a 15-minute break prior to resolving the rest of the jury instructions.
14. Back in session and in discussing the limiting instruction proposed by the Government, Mr. Searby took issue with the jury instruction and with the Government's characterization of evidence as "intrinsic evidence." Mr. Searby turned to the ECF 122 filing by the Government relating to intrinsic evidence and Mr. Searby stated that intrinsic evidence has to be "necessary" and that there was no argument by the Government as to why it was necessary to get into those items. However, he did not call attention to the language referring to "testimony about bribery schemes," which the jury could "accept." Mr. Searby had not spotted this language as problematic in his brief review of the proposed jury instruction.
15. There were several times during the discussion of these jury instructions when Mr. Searby alluded to the fact that he was having difficulties analyzing all of the proposed jury instructions at that time. When responding to the Court as to whether Mr. Searby had any proposed language in response to the Government's "official act" language, Mr. Searby said, "Your Honor, I just read this very – a few hours ago, and I'm scrambling to even analyze all these problems with it, but I do think that we would be happy to come up with . . . ." On another issue, he said that he may have more to say on that later because "[he was] still processing it." When the parties were attempting to untangle what seemed to be a misunderstanding, the Court said, "Okay. See, this is why I always encourage you guys to talk to each other. Because a lot of headaches for me would be eliminated." Mr.

Searby replied, I think it's just the fast pace, Your Honor. I'm sure there's no lack of goodwill."

16. Later that day at 12:39 PM the parties received the finalized jury instructions from the Court. Closing arguments were coming up next after the break.

17. After closing arguments, the defense team met and reviewed the finalized jury instructions. Upon reading the jury instruction regarding the "Limiting Instruction Regarding Certain Evidence" the defense team decided to propose another jury instruction and, in the alternative, withdraw its original request to have a limiting jury instruction on this subject. This was filed as ECF 127 at around 7:42 PM on September 22, 2026.

**<u>September 23, 2026:</u>**

18. I was not present on September 23, 2026, but I have read the transcripts.

19. On Wednesday, September 23, 2026, before the jury was brought in, Mr. Searby asked to have a discussion of the new proposed defense jury instruction that had been filed the night before. The Court said that it had seen it and that it was too little too late. The Court then brought in the jury and read the jury instructions including the limiting instruction which read as such: "You have heard testimony about bribery schemes involving contracting in the area of mental health services, public housing, and schools. The defendant is not charged with any of these schemes. It is up to you to decide whether to accept that evidence. Mr. White is only on trial for the crime charged. He is not charged in this case with any offense relating to bribery schemes involving contracting in the areas of mental health services, public housing and schools, and you may not use this evidence that Mr. White -- to conclude that Mr. White has a bad character or that Mr.

White has a criminal personality. The law does not allow you to convict him simply because you believe he may have done bad things not specifically charged."

20. After the jury returned to the jury room, Mr. Kohlman represented to the Court that the issue the defense had as to the jury instruction was with the phrase "bribery schemes." This concern was because of the inflammatory nature of the term to a lay person.

21. The Court recounted that the objection that was discussed on September 22, 2026 was as to Rule 404 which was removed. Further, the Court noted that the defense had seven hours from the time the instructions had been sent out before the defense said anything. The Court said that "[t]he packages for the jury had already been prepared. It was too little, too late. Even in what was filed last night, it didn't indicate what was wrong. It just indicated disagreement and wanting alternative language, which you could have provided long ago, because the Government provided me with language, but you did not. And that's why it was too little, too late. So I denied that."

22. Mr. Kohlman replied in disagreement and considered that the jury instruction read out was the first time that the jury heard an interpretation of what happened in the last couple of meetings as a bribery scheme. Therefore, the defense moved for a mistrial stating "that's how serious we consider the Court's mistake of not listening to us on the cautionary instruction and giving the instruction . . . ."

23. The Court replied, "That instruction was an instruction that the defense asked for, did not provide language for. The Government provided language, and the objection was to the parallel to 404 and which -- that language was removed at your instruction. You had, then, several hours to object to it, which you did not. You did not object to it until after

the packages were prepared. So it's too little, too late." The Court denied the motion for a mistrial.

24. I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 6, 2026.

/s/ Nicole C. Ledesma

Nicole C. Ledesma